UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THE BALDWIN INSURANCE
GROUP HOLDINGS, LLC, a
foreign Limited Liability Company,
THE BALDWIN GROUP COLLEAGUE, INC.,
a Florida Corporation,
BRP MEDICARE INSURANCE HOLDINGS, LLC,
a Florida Limited Liability Company, and
THE BALDWIN GROUP
HEALTH INSURANCE, LLC F/K/A BRP
INSURANCE III, LLC DBA GUIDED
MEDICARE SOLUTIONS, a
Florida Limited Liability Company

Plaintiffs,                                          CASE NO.: 6:25-cv-1285

v.

YAZMIN PLAZA, an individual,
JUAN SANTOS, an individual, and
AFFORDABLE INSURANCE STORE INC, a Florida
Corporation,

        Defendants.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**<u>PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF REQUESTED</u>**

Plaintiffs, The Baldwin Insurance Group Holdings, LLC, The Baldwin Group

Colleague, Inc., BRP Medicare Insurance Holdings, LLC, The Baldwin Group Health

Insurance, LLC f/k/a BRP Insurance III, LLC d/b/a Guided Medicare Solutions

(collectively, "Baldwin") sue Defendants, Yazmin Plaza ("Plaza"), Juan Santos

("Santos"), and Affordable Insurance Store Inc. ("Affordable," and together with Plaza and Santos, the "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.      This is an action arising from the misappropriation of Baldwin's trade secrets and the violation of a confidentiality and non-solicitation agreement by Plaza, a former employee of Baldwin, for the benefit of her husband, Santos, and his insurance agency, Affordable.  As alleged below, Plaza[1] abused her position as a relationship manager at Baldwin by (1) improperly accessing confidential, proprietary, and trade secret information relating to Baldwin's independent contractor insurance agents and agencies and its customers. Such information includes but is not limited to customer contact information such as names, phone numbers, and email addresses and other confidential information regarding the productivity, customer accounts, policy and carrier knowledge, experience, and personal preferences of Baldwin agents and agencies ("TSI") stored in an internal proprietary system called "Tracker" relating to agents and agencies outside the scope of her responsibilities and sharing same with Santos and Affordable; and (2) collaborating with Santos and Affordable, with the use of Baldwin's TSI to unfairly compete with Baldwin and other independent agencies affiliated with Baldwin, and to direct, solicit, or encourage agents, who were directly representing Baldwin or other independent agencies affiliated with Baldwin, to transfer to Affordable.  As a result of the Defendants' tortious conduct, including the rampant

[1] Plaza was terminated for cause by Baldwin on June 24, 2025.

misuse of Baldwin's TSI, more than 30 agents have requested to be transferred to Affordable since 2024.  All of this conduct is a direct breach of Plaza's continuing confidentiality and non-solicitation obligations in her Protective Agreement (described below) with Baldwin.

2.     In addition to damages, disgorgement, attorneys' fees, and costs, Baldwin seeks preliminary and permanent injunctive relief to prevent Plaza from continuing to violate the confidentiality and non-solicitation provisions of the Protective Agreement (described below) and to prevent Santos and Affordable from continuing their unauthorized use of Baldwin's confidential and proprietary information to unfairly compete. In fact, since Plaza's termination on June 24, 2025, inappropriate solicitations have continued as at least two agents, who earlier in the year had requested a transfer to Affordable, have followed up with Baldwin after months of inactivity regarding their pending transfer request.  And Plaza requested to be released as a Baldwin agent on June 30, 2025, so she can become an agent of Affordable. This release and transfer would not only position her to continue using Baldwin's TSI for the benefit of Affordable but is demonstrative of her willful disregard for her contractual obligations to Baldwin and her lack of accountability for the actions she took as a Baldwin colleague. Baldwin now faces the prospect of even greater harm from the potential that Plaza and Affordable could directly compete with Baldwin during this year's annual enrollment period (October to December 2025). Without a Court Order enjoining the Defendants, such competition includes the possibility that Affordable will seek to terminate its independent agency relationship with Baldwin

and establish an agency relationship with one of Baldwin's competitors. Accordingly, Baldwin seeks an injunction that (1) prohibits Plaza from, directly or indirectly through Santos and Affordable, soliciting any agents that represent Baldwin either directly or through an independent agency in Baldwin's downline; (2) prohibits Affordable from accepting any agents that represent Baldwin either directly or through an independent agency in Baldwin's downline; (3) preserves the status quo and prevents further unfair competition by prohibiting Affordable from terminating its agency relationship with Baldwin during the annual enrollment period of October to December 2025 and/or moving to a downline for a competitor of Baldwin; (4) prohibits Plaza from using Baldwin's confidential, proprietary, and trade secret information; and (5) requires Defendants to return or destroy any Baldwin TSI in their possession.

## PARTIES, JURISDICTION, AND VENUE

3.     The Baldwin Insurance Group Holdings, LLC is a Delaware limited liability company that owns 100% of The Baldwin Group Colleague, Inc., and is the sole member of BRP Medicare Insurance Holdings, LLC, which is the sole member of The Baldwin Group Health Insurance, LLC (formerly known as BRP Insurance III, LLC doing business as Guided Medicare Solutions). Baldwin's FMO (as described below) is operated by colleagues co-employed by The Baldwin Group Health Insurance, LLC and The Baldwin Group Colleague, Inc.

4.     Plaza is an individual, who resides in Seminole County, Florida.

5.     Santos is an individual who resides in Seminole County, Florida.

4

6.    Affordable is a Florida corporation, with its principal place of business in Orlando, Orange County, Florida.

7.    Baldwin brings this action asserting claims against Plaza, Santos, and Affordable under the Defend Trade Secrets Act, 18 U.S.C. § 1831, et seq.  This court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8.    Further, this Court can exercise supplemental jurisdiction over Baldwin's state law claims against Plaza, Santos, and Affordable pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the present action that they form part of the same case or controversy.

9.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this District and because a substantial part of the events giving rise to the claims occurred or are occurring in this District, including Plaza's unauthorized access and use of Baldwin's TSI.

## GENERAL ALLEGATIONS

**A.    Baldwin's Business**

10.    Baldwin is a United States-based insurance broker that provides tailored insurance and risk management insights and solutions to customers across the United States, including but not limited to through a field marketing organization ("FMO") organized and operated by The Baldwin Group Health Insurance, LLC and its subsidiaries.

11.    An FMO works primarily in the public health care sphere acting as an intermediary between insurance carriers that offer Affordable Care Act and Medicare

insurance products ("Carrier Partners") and agents and agencies that sell those products to the public.

12.    An FMO's network of agents and agencies is known in the industry as a "downline," which refers to the hierarchy of agents and agencies that are recruited and contracted under an FMO.  Essentially, the downline consists of those agents and agencies who are contracted to sell insurance products through the larger organization, in this case, The Baldwin Group Health Insurance, LLC and its subsidiaries.

13.    Baldwin's downline consists of individual agents who have established a direct relationship with Baldwin ("Direct ICs"), independent insurance agencies that conduct business in Baldwin's downline through Marketing Level Agreements ("Downline Agencies"), and individual agents who have an indirect relationship with Baldwin through a Downline Agency ("Indirect ICs"). Baldwin serves the public through its exclusive network of Direct ICs, Downline Agencies, and Indirect ICs (the "ICs").

14.    Baldwins' ICs are its lifeline. Because Baldwin's FMO business rises and falls with the stability of its downline, Baldwin has invested significant time, effort, and resources to recruit, train, and retain its agents, and to develop and refine its methods for doing so. The strength of Baldwin's FMO business is the exclusive relationships it has developed with ICs and Baldwin's ability to provide top level marketing and enrollment services to customers and potential customers. Baldwin's relationships with its ICs are one of its most important and valuable assets and directly drive most of Baldwin's FMO revenue.

15.     Baldwin's network of ICs and its lists of customers are confidential and proprietary trade secret information maintained in Tracker.

16.     Baldwin requires its employees, including Plaza, to enter into a Protective Agreement that contains various restrictive covenants as a condition of their continued employment and in order to: (1) preserve Baldwin's legitimate business interests in its employee and customer goodwill, (2) maintain its business relationships with existing and specific prospective ICs, and its customers, (3) ensure the stability of its employee and IC relationships, and protect its confidential, proprietary, and trade secret information.

**B.     Plaza's Role at Baldwin and Relationship to Santos and Affordable**

17.     Plaza is a former employee of Baldwin who worked in Baldwin's Orlando office as as a relationship manager in Baldwin's Medicare line of business from May 2021 until June 24, 2025, when she was terminated for cause as a result of the conduct described in this Complaint.  Plaza also is a Dirtect IC.

18.     At all times relevant, Plaza has been married to Santos, and they reside in the same residence within the Middle District of Florida.  Santos is the President and owner of Affordable.  Affordable is a Baldwin Downline Agency, and thus, one of Baldwin's independent agencies authorized to distribute Medicare Advantage and supplemental insurance policies on behalf of insurance companies that have partnered with Baldwin.  Plaza, Santos, and Affordable collaborated to benefit from the conduct that is described in this Complaint.

19.    During her employment, Plaza was assigned certain ICs to oversee.  As a relationship manager, Plaza was responsible for recruiting, supervising, and training ICs specifically assigned to her for the purpose of marketing and selling Baldwin's Carrier Partner's ACA and Medicare insurance products to the public.

20.    Plaza had no role or duties in supervising or managing ICs in the Orlando area that were not assigned to her.

21.    Plaza had access to and extensive knowledge of all of Baldwin's confidential pricing information, business strategy, training materials, and IC and customer lists and information, which was maintained in Tracker.

22.    As a condition to her employment with Baldwin, Plaza executed a Confidentiality, Non-solicitation and Nonacceptance Agreement on or around May 21, 2021, that contained certain restrictive covenants.

23.    In 2023 and in furtherance of her continued employment by Baldwin, Plaza executed an updated restrictive covenant agreement with Baldwin, the Protective Agreement (the "PA"), which described in detail her duties and obligations with respect to Baldwin TSI.  A copy of the PA is attached as **Exhibit A.**

24.    Plaza agreed in Section 1 of the PA not to disclose, use, or otherwise misappropriate Baldwin's confidential information, as defined in the PA, and to obtain Baldwin's written consent prior to any use or disclosure of such information.  Section 1 further provided that these obligations would survive the termination of Plaza's employment with Baldwin.  Plaza's confidentiality obligations under Section 1 remain in force.

25.     Plaza further agreed in Section 1 that Baldwin owned the Confidential

Information that she would have access to:

> agree that such Confidential Information is and shall remain the property
> of the Company Group, and, both during and after the term of my
> employment, without the prior written consent of the Company Group
> and except in the course of the performance of my employment duties on
> behalf of the Company Group: (i) I will not use or disclose or cause to be
> used or disclosed any Confidential Information to any third person,
> partnership, joint venture, company, corporation, other organization or
> other third party; (ii) I will not take from any Company Group office for
> my own use or the use of any third party any document, paper, computer-
> generated media or other property of the Company Group containing
> Confidential Information (unless necessary during my employment to
> conduct business on behalf of the Company Group and in compliance
> with the Company Group's policies and procedures); and (iii) without
> request upon termination of my employment, whether such termination
> is voluntary or involuntary or with or without cause (subject to Section
> 11, thje date of my termination of employiment being the "**Last Day**"),
> and at any time that the Company Group may so request, I will
> immediately deliver to its designated representative at its office that
> served as the principal place of my employment, or at such other location
> as it may designate, any document, paper, computer-generated media or
> other property of the Company Group (and all copies of same) in my
> possession that contains Confidential Information and will also submit
> for inspection by the Company Group, any personal cellular phone,
> computer, electronic or physical storage device with, on, or in which I
> have used to access or store any Confidential Information or have
> otherwise connected to any Company Group computer system or server.

(Hereinafter, "Confidential Information," which refers to confidential information as

defined in the PA).  Confidential Information includes Baldwin's TSI stored in Tracker.

26.     Plaza further agreed in Section 2 of the PA that during her employment

with Baldwin, and for 24 months following her employment, she would not directly

or indirectly:

> solicit, induce, entice or recruit any of the employees, independent
> contractors, producers, or sales agents (producers and sales agents may

be employees or independent contractors) of the Company Group with whom, during my employment with the Company Group, I had business contact or knowledge of because of my access to Confidential Information including individuals placed by the Company Group in employment or similar relationships at any third party by or through the efforts of the Company Group, or any other third party for which the Company Group acts under contract regardless of such person's or entity's location (recognizing that all of the foregoing are valuable resources to the Company Group), to: (A) terminate any business relationship with the Company Group or (B) enter into or commence any relationship (or hire, engage the services of, or encourage or assist anyone else to hire or engage the services of) as an employee (including as a producer or sales agent) or independent contractor with any other entity or individual. Notwithstanding the foregoing, this Section 2(a)(iv) does not prohibit me from conducting generalized searches for employees or independent contractors by using general advertisements or solicitations, including but not limited to advertisements or solicitations through newspapers, internet or other media of general circulation or engaging and using a search firm not specifically targeted at such individuals (provided that I may not directly hire any such employees or independent contractors during the Restricted Period).

27.     These restrictive covenants are reasonable as to time, place, and scope, and are not contrary to public health, safety, or welfare.

28.     Plaza also agreed to comply with Baldwin's Colleague Handbook (the "Handbook") and its Code of Ethics (the "Code"). The Handbook and Code are attached as **Exhibit B and C.** The Handbook made clear the confidential nature of, and restricted the use of, Baldwin's TSI, including Baldwin's ownership of its TSI. Handbook, Section 7, p. 44 ("All record and files maintained by [Baldwin] are confidential and remain [Baldwin's] property. Records and files are not to be disclosed to any outside party without the express permission of leadership.")  The Code similarly imposed a strict confidentiality requirement on all of Baldwin's TSI. Code, Section 4.

10

29.    The Handbook similarly made clear that Plaza needed permission to review Baldwin's internal records that did not relate to the scope of her work. Handbook, Section 7, p. 44 ("You may only access files or documents you have permission to access."). Plaza provided an electronic signature acknowledging that she had received the Handbook and Code and that she understood it was her responsibility to read and understand each.

30.    Baldwin relied on the restrictive covenants contained in the PA and Plaza's commitment to abide by the Handbook and Code and placed trust in Plaza to work in the best interest of Baldwin.

31.    As discussed below, Plaza betrayed that trust in collaboration with Santos and Affordable through her unauthorized access to Baldwin's TSI, her misuse of Baldwin's TSI, and her involvement in the transfer of more than 30 ICs, including Downline Agencies, to Affordable for the benefit of herself and Santos.

**C.    Plaza's Unauthorized Access to Baldwin's TSI and Defendants' Misuse of Such Information**

32.    As noted above, Plaza was assigned specific agents and agencies within Baldwin's network to provide supervision, training, and sales support.

33.    As a relationship manager, Plaza had access to Baldwin's proprietary system, Tracker, to support her in managing the ICs in Baldwin's downline assigned to her. Tracker stored TSI regarding Baldwin's independent contractor insurance agents and agencies and customers, including but not limited to email addresses, mobile telephone number, other telephone number, the Baldwin relationship manager

11

assigned to the agent/agency, an agent's upline agency, internal notes recorded by Baldwin colleagues, activities relating to the agent/agency created by Baldwin colleagues in relation to the management of the agent/agency, a list of the agent's/agency's contracts with Baldwin's insurance carrier partners, names of the agent's or agency's customers who enrolled in a policy offered by one of Baldwin's insurance carrier partners, date of enrollment, type of policy/plan, date of policy/plan termination, documents archived by Baldwin relating to the agent/agency, and licensing details. Tracker also stores other Baldwin TSI regarding productivity, compensation, customer accounts, policy and carrier knowledge, experience, and personal preferences of Baldwin agents and agencies, including, for example, marketing-level agreements.

34.    As early as January 2024, Plaza began to use Tracker to access Baldwin's TSI relating to ICs that were outside of her responsibilities and not assigned to her. Plaza neither sought from her supervisors nor received permission to access such information.

35.    Plaza's unauthorized access to Baldwin's TSI was captured in audit logs that were contemporaneously maintained by Tracker. As a user navigates within Tracker, the system generates audit logs that show the user's movements in Tracker, including the agent or agency profile reviewed or accessed by the user. In effect, Baldwin's audit logs for Plaza serve as a detailed audit trail of Plaza's movements within Tracker, revealing which agent's or agency's information she accessed and when.

36.    Since January 2024, Plaza has accessed TSI of more than twelve Downline Agencies ***not assigned to her*** (the "Out-of-Scope Agencies") and a Baldwin upline agency through which Downline Agencies conducted business (the "Upline Agency").  In total, Tracker's audit logs show that Plaza accessed information relating to the Out-of-Scope Agencies and the Upline Agency that were not within her supervisory scope on more than 190 occasions, continuing through at least March 2025.

37.    The audit logs further demonstrate Plaza accessed TSI for some of the Out-of-Scope Agencies during critical time periods, such as the annual enrollment period (October 1 – December 31) and open enrollment period (beginning in January), during which Baldwin ICs and customers and prospective customers are heavily engaged in marketing and outreach regarding enrollment and/or changes in plans offered by Baldwin.

38.    For some of the Out-of-Scope Agencies, Plaza also downloaded sensitive documents related to certain of the Out-of-Scope Agencies from Tracker.  These documents were saved in the "Downloads" folder of her Baldwin-issued laptop (the "Plaza Laptop").  Forensic analysis of Plaza's Laptop showed that the agency files were downloaded immediately after Plaza accessed the Out-of-Scope Agency's information on Tracker.  The files in the Downloads folder that still remain on Plaza's laptop include:

        a.    Marketing Level Agreements ("MLAs") between Baldwin and several of the Out-of-Scope Agencies; and

       b.   Excel files containing information on enrollments produced by agents in the Upline Agency's downline, including thousands of names of subscribers who were not customers of agents assigned to Plaza and the volume of enrollments for agents not assigned to Plaza.

39.    Plaza had no legitimate reason to access records for the Out-of-Scope Agencies, Baldwin's Upline Agency, or download sensitive documents relating to those agencies. The records were clearly outside the scope of her role at Baldwin, which was limited to supervising only those ICs assigned to her. Similarly, Plaza had no reason to have more than 100 enrollment activity reports relating to the Upline Agency, containing information relating to agents assigned to other relationship managers, and customers outside of Orlando and in other States. Plaza had not been authorized to access those records.

40.    The only reason Plaza accessed and downloaded such information and documents was for the benefit of her husband, Santos, and Affordable, a business that was owned and run by Santos as its President. While Affordable and the Out-of-Scope Agencies are Downline Agencies, they all compete with one another in the Medicare Advantage market in the Orlando and Central Florida market. Plaza clearly targeted Affordable's competitors.

41.    The timing of Plaza's Tracker activities relating to the Out-of-Scope Agencies and the nature of the information downloaded demonstrate that she was accessed TSI that was highly useful to Santos and Affordable in an effort to unfairly compete with other Downline Agencies:

- The documents downloaded by Plaza include highly sensitive documents that should not be shared with competitors. They include some of the MLAs between Baldwin and the Out-of-Scope Agencies, which ***set forth the financial terms between Baldwin and its independent agencies.*** Having information about Baldwin's financial arrangement with Affordable's competitors is particularly useful to Affordable since it would allow Affordable to negotiate more favorable financial arrangements with Baldwin. It would also allow Affordable to identify agencies with less favorable arrangements and use that information to solicit the agency or its agents by offering more favorable financial terms.

- The downloaded enrollment activity reports contain highly sensitive activity of enrollment activity for the Upline Agency, including thousands of names of subscribers who were not customers of agents assigned to Plaza and the volume of enrollments for agents not assigned to Plaza. These reports allowed Plaza to identify the most productive agents in Baldwin's downline.

- Plaza accessed agency information and downloaded documents during important Medicare enrollment time periods, such as open and annual enrollment periods between October and December and beginning in January. Thus, Defendants were aware of critical enrollment activity during the important enrollemnt periods.

42.    Upon information and belief, Plaza shared with or made Baldwin TSI available to Santos and Affordable, which could be used to offer financial incentives to other agents and agencies to transfer to Affordable and to unfairly compete with Baldwin and other agencies affiliated with Baldwin. In particular, Santos and Affordable had access to the information because:

    a.    The files were stored on Plaza's laptop and readily available at any time to share with Santos at their home.  Analysis of Plaza's Laptop shows that it was connected to Plaza's Wi-Fi network at the residence that Plaza shared with Santos; and

    b.    Plaza accessed Tracker information while she was working at Affordable's office, as demonstrated by system information on Plaza's Laptop that establishes Plaza connected to Affordable Wi-Fi network.

43.    Plaza's Tracker activity relating to the Out-of-Scope Agencies establishes a clear connection to Affordable:

- Plaza accessed records of Affordable the same day and within hours of accessing Tracker TSI for the Out-of-Scope Agencies, demonstrating that Plaza was comparing data for the benefit of Affordable; and

- Plaza's accessed the Out-of-Scope Agencies periodically, indicating that she was monitoring Affordable's competitors on an ongoing basis.

44.    Upon information and belief, Affordable and Santos used Baldwin's TSI inappropriately to gain an advantage over competitors, to recruit productive agents from Baldwin or other Downline Agencies, and for other inappropriate purposes.

**D.    Plaza's Misuse of Baldwin's TSI and Violation of Non-Solicitation**

45.    Upon information and belief, beginning in 2024 and extending *after* Plaza's termination of employment, Plaza used her position at Baldwin, including using TSI, to entice Baldwin ICs to request a transfer to Affordable.  As a result, these agents ceased either their direct representation of Baldwin or their representation of a Downline Agency.

46.    Since February of 2024, more than 30 ICs and three Downline Agencies have requested to be transferred to Affordable.  Many of the agents who transferred were overseen by Plaza so she was aware of their productivity and in contact with the agents.

47.    The enrollment reports periodically downloaded by Plaza from Tracker allowed her to identify Baldwin's productive ICs, including ICs not assigned to her. On one occasion, Tracker audit logs show that Plaza accessed the Tracker profile of an IC not assigned to her the month before the IC requested a transfer.

48.    Upon information and belief, Plaza, Santos and Affordable have also solicited ICs who ultimately did not transfer to Affordable.  And some of those ICs were not assigned to Plaza.  For example, Plaza accessed the Tracker profile of an IC not assigned to her and downloaded an enrollment activity report for that IC.  On information and belief, Plaza, Santos, and Affordable have solicited the IC.  Plaza had no legitimate reason to access records of agents not assigned to her other than soliciting a potential transfer or otherwise promoting Affordable.

49.    Upon information and belief, Plaza and Santos, with the benefit of Baldwin's TSI, have been in contact with Baldwin's ICs since at least 2024 in a concerted effort to direct, encourage, and solicit Baldwin's ICs to transfer to Affordable by offering additional training opportunities, providing more support, and offering additional financial incentives all by using Baldwin TSI.

E.    **Plaza's Termination and the Cease and Desist Letter**

50.    On May 22, 2025, Plaza was suspended and Baldwin sent a cease-and-desist letter to Santos and Affordable stating that Plaza had misapportioned Baldwin's TSI and demanding that they cease soliciting Baldwin's ICs. Nevertheless, Plaza's and Santos's solicitations have continued.

51.    Plaza was terminated for cause on June 24, 2025, and on June 30, 2025, Plaza, who was also an IC of Baldwin, requested to be transferred to Affordable. Since her termination, at least two agents, who earlier in the year had requested a transfer to Affordable, have followed up with Baldwin after months of inactivity regarding their pending transfer request.

52.    Plaza's, Santos's, and Affordable's wrongful and illegal conduct is ongoing and has and is causing irreparable injury to Baldwin for which there is no adequate remedy at law.

53.    All conditions precedent to the bringing of this action, if any, have been performed, waived, or otherwise excused.

54.    In order to enforce its rights, Baldwin has been required to retain the services of the undersigned law firm and has agreed to pay the undersigned firm a reasonable fee.

## CAUSES OF ACTION

### COUNT I –
### MISAPRROPRIATION OF TRADE SECRETS UNDER
### THE DEFEND TRADE SECRETS ACT ("DTSA"), 18 U.S.C. § 1836

### (INJUNCTIVE RELIEF AS TO ALL DEFENDANTS)

55.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 54 above as if set forth fully herein.

56.    The Defend Trade Secrets Act, 18 U.S.C. § 1831, et seq. (the "DTSA"), provides for injunctive relief to address any actual or threatened misappropriation of trade secrets. 18 U.S.C. § 1836(b)(3)(A).

57.    Baldwin owns and possesses trade secrets as defined in the DTSA, including TSI stored in Tracker and other confidential information, and, as more particularly described herein, Baldwin has taken steps to protect the secrecy of that information.

58.    Specifically, Baldwin stores TSI in Tracker relating to Baldwin's ICs, customers, prospective customers, including any and all documents saved in Tracker and reports derived from information stored in Tracker, are trade secrets related to Baldwin's services that are used in, or intended for use in, interstate and/or foreign commerce.

59. Baldwin's TSI is not generally known or readily ascertainable through proper means, and Baldwin derives independent economic value from its TSI by virtue of its secrecy. Baldwin maintains reasonable measures to ensure the secrecy of this information, including by requiring its employees, like Plaza to agree to various restrictive covenants as a condition of their continued employment, limiting access to Tracker to only those employees who need access to Tracker for their role, and requiring a user id and passwords.

60. As an employee, Plaza was privy to Baldwin's TSI, including TSI in Tracker and Baldwin's confidential pricing information, business strategy, training materials, and IC and customer lists and information.

61. Plaza had a duty to keep Baldwin's trade secrets confidential and to only access and use such trade secrets within the scope and course of her role at employment at Baldwin, and to not use the information for her own purposes.

62. Santos and Affordable knew Baldwin's trade secret information available to Plaza was confidential and that she had an affirmative duty and obligation to maintain its secrecy and limit its use.

63. Santos and Afforable also knew Plaza had accessed Baldwin's trade secrets in an unauthorized manner and/or for an unauthorized purpose and under circumstances giving rise to a duty to maintain its secrecy or limit its use but used it anyway for their benefit.

64. Defendants Plaza, Santos, and Affordable have violated the DTSA by intentionally, willfully, and maliciously misappropriating Baldwin's trade secrets,

including TSI relating to the Out of Scope Agencies, TSI relating to agents not assigned to her, TSI related to agents that have requested to be transferred, and downloads from Tracker, solely for their own benefit and without Baldwin's consent, including for the unlawful purpose of soliciting Baldwin's agents and unfairly competing with Baldwin.

65.    Although Baldwin has suffered damages, at this time, damages are not sufficient to remedy Defendants' unlawful misappropriation of Baldwin's trade secrets and Baldwin has, and will continue to, suffer irreparable harm.

66.    Baldwin has a substantial likelihood of success on the merits because of Defendants' blatant, willful, and malicious misappropriation of Baldwin's trade secrets, and an injunction will not disserve the public interest.

67.    Accordingly, Baldwin is entitled to injunctive relief under the DTSA to prohibit Baldwin's misappropriation of Baldwin's trade secret and solicitation of its agents.

68.    Additionally, Baldwin has suffered damages as a result of Defendants' unlawful misappropriation of Baldwin's trade secrets.

69.    Defendants also have been unjustly enriched on account of their unlawful misappropriation of Baldwin's trade secrets.

70.    Further, Baldwin is entitled to its attorneys' fees and costs due to Defendants' willful and malicious violation of the provisions of the DTSA.

WHEREFORE, Plaintiffs respectfully request the entry of:

(i)    preliminary and permanent injunctive relief against Defendants Plaza, Santos, and Affordable that: (a) enjoins Plaza from directly, or indirectly

through Santos and Affordable, soliciting any Direct and Indirect Agents; (b) enjoins Affordable from accepting any Direct and Indirect Agents; (c) preserves the status quo and prevents further unfair competition by prohibiting Affordable from terminating its agency relationship with Baldwin during the annual enrollment period of October to December 2025 and/or moving to a downline for a competitor of Baldwin; and (d) requires Plaza to return or destroy any Baldwin TSI in her possession;

(ii)    an order against Defendants awarding Baldwin damages and prejudgment interest in an amount to be determined at trial for Baldwin's losses and any unjust enrichment received by Defendants;

(iii)   an order against Defendants awarding Baldwin exemplary damages in an amount not more than two times the amount of the damages awarded at trial for Baldwin's losses and any unjust enrichment received by Defendants pursuant to 18 U.S.C. § 1836(b)(3)(D);

(iv)    an order against Defendants awarding Baldwin its attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3)(D); and

(v)     such other and further relief as the Court deems just and proper.

**COUNT II –**
**MISAPRROPRIATION OF TRADE SECRETS UNDER THE FLORIDA**
**UNIFORM TRADE SECRETS ACT ("FUTSA"), Fla. Stat. § 688.001**

**(INJUNCTIVE RELIEF AS TO ALL DEFENDANTS)**

71.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 54 above as if set forth fully herein.

72.     Section 688.001, et seq., Florida Statutes, Florida's Uniform Trade Secrets Act ("FUTSA") provides for injunctive relief to redress any actual or threatened misappropriation of trade secrets.

73.     Baldwin owns and possesses trade secrets as defined in the FUTSA and other confidential information, and, as more particularly described herein, Baldwin has taken steps to protect the secrecy of that information.

74.     Specifically, Baldwin stores TSI in Tracker relating to Baldwin's ICs, customers, prospective customers, including any and all documents saved in Tracker and reports derived from information stored in Tracker, are trade secrets related to Baldwin's services that are used in, or intended for use in, interstate and/or foreign commerce.

75.     Baldwin's TSI is not generally known or readily ascertainable through proper means, and Baldwin derives independent economic value from its TSI by virtue of its secrecy. Baldwin maintains reasonable measures to ensure the secrecy of this information, including by requiring its employees, like Plaza to agree to various restrictive covenants as a condition of their continued employment, limiting access to

Tracker to only those employees who need access to Tracker for their role, and requiring a user id and passwords.

76.    As an employee, Plaza was privy to Baldwin's TSI, including TSI in Tracker and Baldwin's confidential pricing information, business strategy, training materials and IC and customer lists and information.

77.    Plaza had a duty to keep Baldwin's trade secrets confidential, to only access and use such trade secrets within the scope and course of her role at employment at Baldwin, and to not use the information for her own purposes.

78.    Santos and Affordable knew Baldwin's trade secret information available to Plaza was confidential and knew Plaza had accessed Baldwin's trade secrets in an unauthorized manner and/or for an unauthorized purpose and under circumstances giving rise to a duty to maintain its secrecy or limit its use.

79.    Defendants Plaza, Santos, and Affordable have violated the FUTSA by intentionally, willfully, and maliciously misappropriating Baldwin's trade secrets, including TSI relating to the Out of Scope Agencies, TSI relating to agents not assigned to her, TSI related to agents that have requested to be transferred, and downloads from Tracker, solely for their own benefit and without Baldwin's consent, including for the unlawful purpose of soliciting Baldwin's agents and unfairly competing with Baldwin.

80.    Although Baldwin has suffered damages, at this time, damages are not sufficient to remedy Defendants' unlawful misappropriation of Baldwin's trade secrets and Baldwin has, and will continue to, suffer irreparable harm

81.     Baldwin has a substantial likelihood of success on the merits because of Defendants' blatant, willful, and malicious misappropriation of Baldwin's trade secrets, and an injunction will not disserve the public interest.

82.     Accordingly, Baldwin is entitled to injunctive relief under the FUTSA to prohibit Baldwin's misappropriation of Baldwin's trade secrets and solicitation of its agents.

83.     Additionally, Baldwin has suffered damages as a result of Defendants' unlawful misappropriation of Baldwin's trade secrets.

84.     Defendants also have been unjustly enriched on account of their unlawful misappropriation of Baldwin's trade secrets.

85.     Further, Baldwin is entitled to its attorneys' fees and costs due to the Defendants' willful and malicious violation of the provisions of the FUTSA.

WHEREFORE, Plaintiffs respectfully request the entry of:

(i)     preliminary and permanent injunctive relief against Defendants Plaza, Santos, and Affordable that: (a) enjoins Plaza from directly, or indirectly through Santos and Affordable, soliciting any Direct and Indirect Agents; (b) enjoins Affordable from accepting any Direct and Indirect Agents; (c) preserves the status quo and prevents further unfair competition by prohibiting Affordable from terminating its agency relationship with Baldwin during the annual enrollment period of October to December 2025 and/or moving to a downline for a competitor of Baldwin; and (d) requires Plaza to return or destroy any Baldwin TSI in her possession;

(ii)     an order against Defendants awarding Baldwin damages and prejudgment interest in an amount to be determined at trial for Baldwin's losses and any unjust enrichment received by Defendants;

(iii)    an order against Defendants awarding Baldwin exemplary damages in an amount not more than two times the amount of the damages awarded at trial for Baldwin's losses and any unjust enrichment received by Defendants pursuant to §688.004(2), Fla. Stat.;

(iv)     an order against Defendants awarding Baldwin its attorneys' fees and costs pursuant to §688.005, Fla. Stat.; and

(v)      such other and further relief as the Court deems just and proper.

**COUNT III –**
**UNFAIR COMPETITION UNDER THE FLORIDA DECEPTIVE AND**
**UNFAIR TRADE PRACTICES ACT ("FDUTPA"), Fla. Stat. § 501.201 et. seq.**

**(AS TO ALL DEFENDANTS)**

86.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 54 above as if set forth fully herein.

87.     Pursuant to Fla. Stat. § 501.204, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful."

88.     Defendants' unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices are described above and include Plaza's misappropriation of Baldwin's TSI and Defendants' misuse of such

information, including soliciting Baldwin ICs to transfer to Affordable, gaining an unfair advantage over Baldwin in contractual negotiations, and otherwise positioning Defendants to unfairly compete with Baldwin.

89.    The aforementioned conduct constitutes an unfair method of competition, unconscionable act or practice, or unfair deceptive act in violation of Fla. Sta. § 501.204.

90.    Defendants' deceptive and unfair trade acts have caused direct and proximate damage to Baldwin's business and will continue to cause actual and irreparable injury to Baldwin.

WHEREFORE, Plaintiffs respectfully request the entry of:

(vi)    preliminary and permanent injunctive relief against Defendants Plaza, Santos, and Affordable that: (a) enjoins Plaza from directly, or indirectly through Santos and Affordable, soliciting any Direct and Indirect Agents; (b) enjoins Affordable from accepting any Direct and Indirect Agents; (c) preserves the status quo and prevents further unfair competition by prohibiting Affordable from terminating its agency relationship with Baldwin during the annual enrollment period of October to December 2025 and/or moving to a downline for a competitor of Baldwin; and (d) requires Plaza to return or destroy any Baldwin TSI in her possession;

(vii)    an order against Defendants awarding Baldwin damages in an amount to be determined at trial for Baldwin's losses and any unjust enrichment received by Defendants;

(viii)   an order against Defendants awarding Baldwin its attorneys' fees and costs pursuant to § 501.2105, Fla. Stat.; and

(ix)   such other and further relief as the Court deems just and proper.

## COUNT IV –
## TORTIOUS INTERFERENCE WITH BALDWIN'S ADVANTAGEOUS BUSINESS AND/OR CONTRACTUAL RELATIONSHIPS

### (AS TO ALL DEFENDANTS)

91.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 54 above as if set forth fully herein.

92.   The acts of Defendants set forth herein constitute intentional interference with the contractual and business relationships of Baldwin with its ICs in violation of the common law of the State of Florida.   Defendants willfully misappropriated Baldwin's TSI and misused such information to solicit Baldwin's ICs to transfer to Affordable.

93.   As a result of Defendants' conduct, Baldwin has suffered damages, including loss of its ICs.

94.   Through Defendants' knowingly tortious interference with Baldwin's business relations with its ICs, Affordable has proximately caused, and will continue to cause, substantial injury to Baldwin (including loss of business).

95.   The acts described herein were willful, wanton, and malicious and were taken with reckless disregard for the rights of Baldwin so as to warrant an award of punitive damages.

96.    Affordable, through Santos, knew about the existence of Baldwin's advantageous and contractual relationships with its ICs and Plaza's and Santos' wrongful acts, yet – despite such knowledge – still permitted, encouraged, induced, and ratified such conduct.

97.    Defendants' ongoing conduct have caused and, if not enjoined, will continue to cause irreparable injury to Baldwin in the disruption of its advantageous business and contractual relations with its ICs, including monetary damages.

WHEREFORE, Plaintiffs respectfully request the entry of:

(i)    preliminary and permanent injunctive relief against Defendants Plaza, Santos, and Affordable that: (a) enjoins Plaza from directly, or indirectly through Santos and Affordable, soliciting any Direct and Indirect Agents; and (b) enjoins Affordable from accepting any Direct and Indirect Agents;

(ii)   an order against Defendants awarding Baldwin damages in an amount to be determined at trial for Baldwin's losses and any unjust enrichment received by Defendants;

(iii)  an order against Defendants awarding Baldwin punitive damages;

(iv)   an order against Defendants awarding Baldwin its costs and disbursements incurred in connection with this action; and

(v)    such other and further relief as the Court deems just and proper.

**COUNT V –**
**TORTIOUS INTERFERENCE WITH BALDWIN'S ADVANTAGEOUS**
**BUSINESS AND/OR CONTRACTUAL RELATIONSHIPS**

**(AS TO DEFENDANTS SANTOS AND AFFORDABLE)**

98.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 54 above as if set forth fully herein.

99.     Santos and Affordable have tortiously interfered with Baldwin's contractual and business relationship with Plaza, including the PA in violation of the common law of the State of Florida. Santos and Affordable through their participation in the solicitation of Baldwin's ICs have caused Plaza to breach the confidentiality and non-solicitation provisions in the PA and other duties owed to Baldwin.

100.     Santos and Affordable knew about the existence of Baldwin's advantageous and contractual relationships with Plaza and they willfully and tortiously exploited that relationship for their benefit, including the solicitation of Baldwin's ICs and disclosure of Baldwin's TSI.

101.     As a direct and proximate result of Santos's and Affordable's tortious conduct, Baldwin has suffered damages, including loss of ICs and is in danger of losing additional agents.

102.     The acts described herein were willful, wanton, and malicious and were taken with reckless disregard for the rights of Baldwin so as to warrant an award of punitive damages.

103.     Santos's and Affordable's ongoing conduct involving the solicitation of Baldwin's ICs have caused and, if not enjoined, will continue to cause irreparable

injury to Baldwin, resulting in the further loss of Baldwin's advantageous and contractual relationships with its ICs, including monetary damages.

WHEREFORE, Plaintiffs respectfully request the entry of:

(i)      preliminary and permanent injunctive relief against Plaza, Santos, and Affordable that: (a) enjoins Plaza from directly, or indirectly through Santos and Affordable, soliciting any Direct and Indirect Agents; and (b) enjoins Affordable from accepting any Direct and Indirect Agents;

(ii)     an order against Santos and Affordable awarding Baldwin damages in an amount to be determined at trial for Baldwin's losses and any unjust enrichment received by Defendants;

(iii)    an order against Santos and Affordable awarding Baldwin punitive damages;

(iv)     an order against Santos and Affordable awarding Baldwin its costs and disbursements incurred in connection with this action; and

(v)      such other and further relief as the Court deems just and proper.

## COUNT VI –
## BREACH OF THE PA

### (AS TO DEFENDANT PLAZA)

104.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 54 above as if set forth fully herein.

105.    The PA is a binding contract between Plaza and Baldwin.

106.    Plaza agreed in Section 1 of the PA not to disclose, use, or otherwise misappropriate Baldwin's confidential information, as defined in the PA, and to obtain Baldwin's written consent prior to any use or disclosure of such information.

107.    Plaza further acknowledged in the PA that a confidential and fiduciary relationship existed between her and Baldwin in connection with Baldwin's confidential information.

108.    Plaza further agreed in Section 2 of the PA that during her employment with Baldwin, and for 24 months following her employment, she would not directly or indirectly solicit ICs.

109.    In Section 2(e) of the PA, Plaza agreed that these restrictive covenants are appropriate and reasonable as to time, place, and scope.

110.    Plaza has materially breached the PA through her unauthorized access to Baldwin's TSI, her misuse of Baldwin's TSI, and her involvement in the solicitation and transfer of agents and agencies from Baldwin to Affordable for the benefit of herself and Santos.

111.    Plaza's ongoing conduct has caused and, if not enjoined, will continue to cause irreparable injury to Baldwin in the disruption of business, as well as its relationships with its ICs.

112.    Baldwin has suffered damages as a result of Plaza's breach, including, but not limited to, the loss of the ICs Baldwin works directly with.

113.    There is no adequate remedy at law to compensate Baldwin for the breach by Plaza.

114.    Plaza expressly agreed in Section 4 of the PA that Baldwin is entitled to injunctive relief with regard to any violation of the restrictive covenants in the PA by Plaza ("I agree and acknowledge that damages at law will be difficult, if not impossible, to accurately measure in the event that I violate the terms of my covenants contained in this PA, including with respect to confidentiality, non-solicitation … and that the Company Group would suffer substantial damage and irreparable harm as a result of such violation and that monetary damages alone would be inadequate.  I agree that upon a violation of any of the Covenants, the Company Group will be entitled … to obtain temporary, preliminary, and permanent injunctive relief").

115.    The injunctive relief sought would not harm the public interest.

116.    Under the PA and Fla. Stat. § 542.335, Baldwin is entitled to recover its reasonable attorneys' fees, costs and expenses from Plaza.

WHEREFORE, Plaintiffs respectfully request the entry of:

(a) preliminary and permanent injunctive relief against Plaza that: (a) enjoins Plaza, and any person acting by, for, or through her, from soliciting any Direct and Indirect Agents; (b) enjoins Plaza from using Baldwin's confidential, proprietary, and trade secret information; and (c) requires Plaza to return or destroy any Baldwin TSI in her possession;

(b) an order against Plaza awarding Baldwin damages in an amount to be determined at trial for Baldwin's losses and any unjust enrichment received by Defendants;

(c) an order against Plaza awarding Baldwin its attorneys' fees and costs pursuant to the PA and Fla. Stat. §542.335.; and

(vi) such other and further relief as the Court deems just and proper.

**COUNT VII –**
**BREACH OF DUTY OF LOYALTY OWED TO BALDWIN**

**(AS TO DEFENDANT PLAZA)**

117. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 54 above as if set forth fully herein.

118. As an employee of Baldwin, and under the PA, Plaza owed Baldwin a duty of good faith, honesty, candor, and loyalty in the performance of her duties.

119. Prior to Plaza's termination of her employment from Baldwin, Plaza breached her duty of loyalty to Baldwin by engaging in disloyal acts, including without limitation, directing Baldwin's ICs to Affordable and using Tracker for purposes unrelated to her role at Baldwin, including using TSI for the benefit of herself, Santos, and Affordable.

120. Plaza's actions were inconsistent with her employment at Baldwin and adverse to Baldwin's financial and other business interests.

121. Through her disloyal acts, Plaza has proximately caused injury to Baldwin.

122. As a result of Plaza's breach of duty, Baldwin has been damaged.

123.   The acts described herein were willful, wanton, and malicious and were taken with reckless disregard of those duties and Baldwin's rights so as to warrant an award of punitive damages.

WHEREFORE, Plaintiffs respectfully requests the entry of:

(a)  an order against Plaza awarding Baldwin damages in an amount to be determined at trial for Baldwin's losses;

(b) an order against Plaza awarding Baldwin punitive damages;

(c) an order against Plaza awarding Baldwin its costs and disbursements incurred in connection with this action; and

(d) such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury pursuant to Rule 38, Fed. R. Civ. P., on all issues so triable.

Dated July 11, 2025

Respectfully submitted,

**FRIDMAN FELS & SOTO, PLLC**
150 Alhambra Circle
Suite 715
Coral Gables, Florida 33134

By: */s/ Michael Garcia*
Michael E. Garcia
Fla. Bar No. 372330
Adam S. Fels
Fla. Bar No.114917
Alejandra Berlioz
Fla. Bar No. 118092

Counsel for Plaintiffs
**The Baldwin Insurance Group
Holdings, LLC
The Baldwin Group Colleague, Inc.
BRP Medicare Insurance Holdings,
LLC
The Baldwin Group Health
Insurance, LLC**


## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing was electronically filed

with the Clerk by using the CM/ECF Portal and a courtesy copy will be sent to

Defendants' counsel by electronic mail on this 11th day of July 2025.


Patricia Candamo
trish@candamolaw.com
**Counsel for Defendants**


*By: /s/ Alejandra Berlioz*
       Alejandra Berlioz, Esq.